IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GEORGE LESTER HARRIS,       )
                                     )
            Petitioner       )
                                     )
            vs.               )
                                     )
DAVID DIGUGLIELMO, Superintendent SCI-    )     Civil Action No. 07-213
Graterford; THE ATTORNEY GENERAL OF     )     Chief Judge Donetta W. Ambrose/
THE STATE OF PENNSYLVANIA; and THE      )     Magistrate Judge Amy Reynolds Hay
DISTRICT ATTORNEY OF THE COUNTY OF    )
ALLEGHENY,                       )
                                     )
           Respondents     )
                                     )

REPORT AND RECOMMENDATION

RECOMMENDATION

      It is respectfully recommended that the Habeas Petition filed pursuant to 28 U.S.C. §

2254 be denied.  A certificate of appealability should likewise be denied.

REPORT

      George Lester Harris ("Petitioner") has filed, through privately retained counsel, a habeas

petition pursuant to 28 U.S.C. § 2254.  He seeks relief from convictions of aggravated assault

and a firearms violation stemming from a November 7, 1998 shooting of Matthew Smith.  The

present counseled petition should be dismissed because some of the issues raised were

procedurally defaulted and those that were not defaulted are not meritorious.

      The facts of the crime were summarized in the Common Pleas Court opinion of

December 7, 1998:

           The evidence presented at trial established that on the evening o[f]
      November 5, 1997, the victim, Matthew Smith, went to the apartment of Sheila
      Magwood. The victim was a long-time friend of Sheila Magwood and her sister,

Carla. When the victim arrived, he saw the defendant, who he knew by the name of Jamal, leave the apartment. The victim knew the defendant to be Carla Magwood's boyfriend. After the defendant left, Sheila made dinner and they both ate. After listening to music, drinking and smoking marijuana laced with crack cocaine, the victim tried paging his cousin and a friend to pick him up and take him home. Sheila Magwood went to bed in a back room around 11:00 p.m. or shortly after midnight on November 6, 1997. After no one returned his calls, the victim took his boots off and laid down on the couch until someone came to pick him up.

He fell asleep on the couch and was awakened at 3:00 a.m. by a knock on the front door. He rushed to the door thinking it was his cousin arriving to pick him up. Looking out the side window, he saw the defendant at the front door. The defendant asked him to wake Sheila. The victim refused, telling the defendant to come back tomorrow. The defendant again asked him to wake Sheila, and the victim again refused to open the door or wake Sheila Magwood. The defendant then jumped over the porch bannister and went to Carla Magwood's car. Assuming that the defendant was going to drive away, the victim went to the couch and began to put his boots on. He went back to the window and saw that the defendant was standing at the window again. He saw the defendant had a chrome gun, and then heard a shot. After the defendant shot him through the window, the victim backed up and collapsed while blood squirted from his chest. He got up and ran to the back room and told Sheila that Jamal had shot him.

Dkt. [6-3] at 24 - 25 (Trial Court slip op. on direct appeal).

The victim, Matthew Smith survived and testified at trial as to what happened.  The trial was presided over by Judge Bigley, who also presided over the PCRA proceedings in the trial court.  The jury convicted Petitioner.

Petitioner raises the following issues in his counseled habeas petition:[1]

I.  PETITIONER IS ENTITLED TO HAVE THE WRIT GRANTED AND A NEW TRIAL ORDERED BECAUSE HE WAS DENIED COUNSEL AT HIS PRELIMINARY HEARING, A CRITICAL STAGE OF HIS PROCEEDINGS. PREJUDICE NEED NOT BE SHOWN.

Dkt. [1] at 6.

---

[1]  On the docket there appear to have been filed two identical habeas petitions.  Dkt. [1] and Dkt. [5].  The Court will consider Dkt. [1] the operative petition and cite thereto.

II.  TRIAL COUNSEL AND APPELLATE COUNSEL WERE INEFFECTIVE FOR HAVING FAILED TO RAISE THE ABOVE DENIAL OF COUNSEL CLAIM.

Id. at 7.

III.  PETITIONER IS ENTITLED TO HAVE THE WRIT GRANTED AND A NEW TRIAL ORDERED BECAUSE HE WAS DENIED DUE PROCESS OF LAW DURING TRIAL WHEN HIS PROSECUTOR MISLEAD THE COURT AND JURY BY ELICITING TESTIMONY FROM WITNESS MATTHEW SMITH THAT THERE WAS NO DEAL (OTHER THAN INFORMAL IMMUNITY) INVOLVED IN EXCHANGE FOR HIS INDISPENSABLE TESTIMONY AGAINST PETITIONER. . . . APPELLATE COUNSEL WAS LIKEWISE INEFFECTIVE FOR FAILING TO RAISE THIS CLAIM.

Id.[2]

IV. PETITIONER IS ENTITLED TO HAVE THE WRIT GRANTED AND A NEW TRIAL ORDERED BECAUSE TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO CALL HIS ALIBI WITNESSES. MOREOVER THE STATE COURT DECISIONS ARE IN SUCH CONFLICT WITH THE ACTUAL RECORD MADE OF THE TESTIMONY OF AN ALIBI WITNESS THAT THEY ARE TOTALLY UNREASONABLE AND ENTITLED TO NO DEFERENCE.  APPELLATE COUNSEL WAS LIKEWISE INEFFECTIVE FOR FAILING TO RAISE THIS CLAIM.

Id. at 8.

IV.  PETITIONER IS ENTITLED TO HAVE THE WRIT GRANTED AND A NEW TRIAL ORDERED BECAUSE TRIAL COUNSEL INEFFECTIVELY ADVISED HIM NOT TO TESTIFY BECAUSE OF HIS FEAR THAT CONVICTIONS WHICH WERE NOT CRIMEN FALSI WOULD BE USED TO IMPEACH HIS TESTIMONY. . . . APPELLATE COUNSEL WAS LIKEWISE INEFFECTIVE FOR FAILING TO RAISE THIS CLAIM.

Id. at 9.

---

[2]  The victim, Matthew Smith, was taken to the hospital immediately after being shot and drugs were discovered on his person and he was charged with drug offenses.  So that Matthew Smith could testify as a witness at Petitioner's trial, a deal was struck that, at the very least, granted Matthew Smith use immunity for his testimony.  In this habeas proceeding, Petitioner argues that Matthew Smith received more than just use immunity for his testimony.

***Relevant Procedural History***

      At trial Petitioner was represented by Attorney John Elash.  After Petitioner was convicted by a jury, Attorney Elash filed in June 1998, a notice of appeal and a Concise Statement of Matters complained of on appeal.   Shortly thereafter, Attorney Elash filed a motion to withdraw as counsel and Attorney Diana Stavroulakis was appointed to represent Petitioner. Attorney Stavroulakis then filed in November 1998, a concise statement of matter complained of on appeal.  Thereafter, Petitioner, through Attorney Stavroulakis, filed a brief in the Superior Court wherein the only two issues raised were:

> I.  The trial court erred in failing to make a conclusion on the record regarding whether appellant should be classified as a high risk dangerous offender.
> II.  The verdict was against the weight of the evidence.

Dkt. [6-4] at 5.  The Superior Court affirmed the judgment of sentence.   Dkt. [6-5] at 25-31.

Then in September 1999, Petitioner, through Attorney Stavroulakis, filed a Petition for Allowance of Appeal ("PAA") in the Pennsylvania Supreme Court wherein the only two issues raised were as follows:

> I.  The Superior Court erred in affirming the judgment of sentence, where the trial court failed to make a conclusion on the record regarding whether petitioner should be classified as a high risk dangerous offender.
> II.  The Superior Court erred in affirming the judgment of sentence, where the verdict was against the weight of the evidence.

Dkt. [6-6] at 7.   The Pennsylvania Supreme Court denied relief in February 2000.  Dkt. [6-6] at 38.

      In June 2000, Petitioner file a pro se PCRA petition.  Dkt. [6-7] at 1to 18.  After some intervening procedures wherein the Office of the Public Defender was appointed to represent Petitioner in the PCRA proceedings and subsequently permitted to withdraw due to a conflict of

interest (i.e., the Public Defender's office represented the victim in this case in the negotiation of the use immunity agreement so that the victim could testify in the Petitioner's case), Attorney Thomas Farrell was appointed to represent Petitioner.  Dkt. [6-7] at 40.

In December 2000, Petitioner, through Attorney Farrell, filed an amended PCRA petition. The Commonwealth conceded that Petitioner's sentence was unconstitutional given that the two strike law under which Petitioner had been sentenced, (which was the first issue raised in the amended PCRA petition) was declared unconstitutional.  Dkt. [6-8] at 38 to 39.   Based thereon, the PCRA court granted relief and imposed a new sentence, i.e., the sentence that Petitioner is currently serving.  Neither the Commonwealth's answer to the amended PCRA petition nor the PCRA court addressed Petitioner's other issues raised in the amended PCRA petition.  After re-sentencing, Attorney Farrell filed post-sentence motions, Dkt. [6-9] at 5 to 6, wherein he raised the remaining issues raised in the amended PCRA petition that had gone unaddressed.  The Court denied the post sentence motions.  Id. at 11.  Attorney Farrell filed a notice of appeal and, subsequently a statement of matters complained of on appeal.

Attorney Farrell sought to withdraw at some point and Judge Bigley granted the request and appointed Attorney Marvin Leibowitz.  Petitioner then filed his brief in the Superior Court.[3]

_____

[3]  In that brief, the following issues were raised:

I.  WHETHER APPELLATE COUNSEL GAVE INEFFECTIVE ASSISTANCE FOR FAILING TO ARGUE THAT TRIAL COUNSEL GAVE INEFFECTIVE ASSISTANCE FOR FAILING TO CALL CERTAIN ALIBI WITNESSES AT TRIAL?

II.  WHETHER THE APPELLANT WAS DENIED DUE PROCESS OF LAW WHEN THE PROSECUTOR MISLED THE COURT CONCERNING THE FACT THAT THERE WAS NO DEAL FOR THE VICTIM'S TESTIMONY WHEN IN FACT THE VICTIM RECEIVED A DEAL?  DID APPELLATE COUNSEL GAVE [sic] INEFFECTIVE ASSISTANCE FOR FAILING TO COMPLAIN ABOUT TRIAL COUNSEL CONCERNING THIS ISSUE?

The Superior Court held that the appeal was not properly before that court because the parties and the lower court had treated the appeal as if it were a direct appeal from a judgment of sentence after a trial rather than an appeal of the PCRA proceeding wherein relief was partially granted in the form of resentencing but where the other issues raised in the amended PCRA petition were never addressed below. Dkt. [7-4] at 28 to 33. Accordingly, the Superior Court dismissed the appeal and remanded to the PCRA court for "further proceedings on Appellant's petition for relief under the Post Conviction Relief act." Dkt. [7-4] at 31.

Upon remand, the PCRA court directed Petitioner to file an amended PCRA petition or to give notice to the Court that he intended to stand on the original amended PCRA petition. Dkt. [7-4] at 33.

---

III. WHETHER THE APPELLANT WAS DENIED HIS RIGHT TO COUNSEL AT THE PRELIMINARY HEARING PURSUANT TO THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION AS WELL AS THE PENNSYLVANIA CONSTITUTION? DID TRIAL AND APPELLATE COUNSEL GIVE INEFFECTIVE ASSISTANCE FOR FAILING TO RAISE THIS ISSUE?

IV. WHETHER THE APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL BY FAILING TO CROSS EXAMINE WITNESS CARLA MAGWOOD CONCERNING A LETTER, BY FAILING TO CROSS EXAMINE CARLA MAGWOOD CONCERNING THE FACT THAT SHE WAS INTIMIDATED BY THE VICTIM'S SISTER, BROTHER, SISTER-IN-LAW AND COUSIN, BY FAILING TO CROSS EXAMINE CARL [sic] MAGWOOD CONCERNING A MONEY LAUNDERING INDICTMENT, BY FAILING TO DEMAND THE MEDICAL RECORDS OF THE ALLEGED VICTIM, MATTHEW SMITH, AND BY FAILING TO ARGUE THAT THE VICTIM MATTHEW SMITH PERJURED HIMSELF AS TO WHEN HE ARRIVED IN PITTSBURGH, PENNSYLVANIA? DID APPELLATE AND POST-CONVICTION COUNSEL FAIL TO RAISE THESE ISSUES?

Dkt. [7-2] at 9.

Attorney Leibowitz then filed a second amended PCRA petition in September 2002.  Dkt.

[7-5] at 1 to 4.[4]  An evidentiary hearing was conducted on November 20, 2002 concerning the

Second Amended PCRA petition.  Dkt. [7-7] (transcript of hearing).[5]  Thereafter, Petitioner,

through Attorney Leibowitz filed a third amended PCRA petition.[6]  Another evidentiary hearing

_____

[4]  That second amended PCRA petition raised the following issues:

c.  Appellate counsel and prior PCRA counsel gave ineffective assistance of counsel for failing to argue that trial counsel gave ineffective assistance for failing to call certain alibi witnesses at trial.
d.  The Petitioner was denied due process of law when the prosecutory [sic] misled the Court concerning the fact that there was no deal for the victim's testimony when in fact the victim received a deal.  Appellate counsel gave ineffective assistance for failing to complain about trial counsel concerning this issue.
e.  Petitioner was denied his right to counsel at the preliminary hearing pursuant to the sixth amendment of the United States Constitution as well as the Pennsylvania Constitution; trial and appellate counsel gave ineffective assistance for failing to raise the issue.
f.  The petitioner was denied the effective assistance of trial counsel by failing to cross examine witness Carol [sic] Magwood concerning a letter, by failing to cross examine Carla Magwood concerning the fact that she was intimidated by the victim's sister, brother, sister-in-law and cousin, by failing to cross examine Carla Magwood concerning a money laundering indictment, by failing to demand the medical records of the alleged victim Matthew Smith, and by failing to argue that the victim Matthew Smith perjured himself as to when he arrived in Pittsburgh, Pennsylvania.  Appellate and prior post-conviction counsel failed to raise these issues.

Dkt. [7-5]  at 3 to 4.

[5]  The Respondents' Answer incorrectly cites to Exhibit 50 as being the exhibit of the transcript for the November 20, 2002 hearing.  Dkt. [6] at 12, n. 14.  In fact, Exhibit 50 is the transcript of the hearing conducted on February 19, 2003.  See Dkt. [8-2] (Exhibit 50).  The transcript of the November 20, 2002 hearing is Commonwealth's Exhibit 47.  Dkt. [7-7].  Similarly, footnote 15 in the Commonwealth's answer incorrectly refers to Exhibit 47 as the transcript for the February 19, 2003 hearing.

[6]  In that Third Amended PCRA petition, the issues raised were the same as the issues raised in the Second Amended PCRA petition plus the following issue:

g.  The petitioner was denied the effective assistance of trial counsel by advising defendant not to testify on his own behalf because he would be impeached by his criminal record, which did not include convictions that were crimen falsi within ten years of the trial.  Appellate and post-conviction counsel failed to raise this issue.

was conducted.  Dkt. [8-2] (Commonwealth Exhibit 50, transcript of Feb. 19, 2003 hearing).

Judge Bigley issued a notice of intent to dismiss the Third Amended PCRA petition explaining

the reasons for doing so.  Dkt. [8-3] at 3 to 8.   Judge Bigley also filed a Supplemental Notice of

Intent to dismiss.  Dkt. [8-3] at 15 to 16.   On June 21, 2004, Judge Bigley dismissed the Third

Amended PCRA petition.  Dkt. [8-3] at 21.

---

Dkt. [7-8] at 4.

Petitioner, through Attorney Leibowitz, filed an appeal to the Superior Court.[7]   The Superior Court denied relief.  Dkt. [8-6] at 1 to 13.   Petitioner, through Attorney Leibowitz, filed a PAA, Dkt. [8-7] at 1 to 30, wherein, he raised the same issues as he had on appeal to the

---

[7]  In his appellate brief to the Superior Court, Petitioner raised the following issues:

I.  WHETHER APPELLATE COUNSEL GAVE INEFFECTIVE ASSISTANCE FOR FAILING TO ARGUE THAT TRIAL COUNSEL GAVE INEFFECTIVE ASSISTANCE FOR FAILING TO CALL ALIBI WITNESSES AT TRIAL? . . .

II.  WHETHER THE APPELLANT WAS DENIED DUE PROCESS OF LAW WHEN THE PROSECUTOR MISLED THE COURT CONCERNING THE FACT THAT THERE WAS NO DEAL FOR THE VICTIM'S TESTIMONY WHEN IN FACT THE VICTIM RECEIVED A DEAL.  APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL FOR FAILURE TO CROSS EXAMINE AS TO MOTIVE TO LIE.  APPELLATE COUNSEL GAVE INEFFECTIVE ASSISTANCE FOR FAILING TO COMPLAIN ABOUT TRIAL COUNSEL CONCERNING THESE ISSUES? . . .

III.  WHETHER THE APPELLANT WAS DENIED HIS RIGHT TO COUNSEL AT THE PRELIMINARY HEARING PURSUANT TO THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION AS WELL AS THE PENNSYLVANIA CONSTITUTION; TRIAL AND APPELLATE COUNSEL GAVE INEFFECTIVE ASSISTANCE FOR FAILING TO RAISE THIS ISSUE? . . .

IV.  WHETHER THE APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL BY FAILING TO CROSS EXAMINE WITNESS CARLA MAGWOOD CONCERNING A LETTER, BY FAILING TO CROSS EXAMINE CARLA MAGWOOD CONCERNING A MONEY LAUNDERING INDICTMENT, BY FAILING TO DEMAND THE MEDICAL RECORDS OF THE ALLEGED VICTIM MATTHEW SMITH, AND BY FAILING TO ARGUE THAT THE VICTIM MATTHEW SMITH PERJURED HIMSELF AS TO WHEN HE ARRIVED IN PITTSBURGH, PENNSYLVANIA.  APPELLATE AND PRIOR  POST-CONVICTION COUNSEL FAILED TO RAISE THESE ISSUES? . . .


V.  WHETHER THE APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL BY ADVISING APPELLANT NOT TO TESTIFY ON HIS OWN BEHALF BECAUSE HE WOULD E IMPEACHED BY HIS CRIMINAL RECORD, WHICH DID NOT INCLUDE CONVICTIONS THAT WERE CRIMEN FALSI WITHIN TEN YEARS OF TRIAL.  APPELLATE AND POST-CONVICTION COUNSEL FAILED TO RAISE THIS ISSUE.? . . .

Dkt. [8-4] at 9 to 10.

9

Superior Court.  The Pennsylvania Supreme Court denied the PAA in April 2006.  Dkt. [8-8] at 27.

*Applicable Legal Principles*

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, tit. I, §101 (1996) (AEDPA), which amended the standards for reviewing state court judgments in federal habeas petitions filed under 28 U.S.C. § 2254, was enacted on April 24, 1996.  Because Petitioner's habeas petition was filed after the AEDPA's effective date, AEDPA is applicable to this case.  Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000).

Where the State courts have reviewed a federal issue presented to them and disposed of the issue on the merits, and that issue is also raised in a federal habeas petition, AEDPA provides the applicable deferential standards by which the federal habeas court is to review the State courts' disposition of that issue.  See 28 U.S.C.§ 2254(d) and (e).[8]

---

[8]  28 U.S.C. § 2254(d) and(e) provide as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
  (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.
  (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--
    (A) the claim relies on--
      (i) a new rule of constitutional law, made retroactive to cases on collateral review by the

In <u>Williams v. Taylor</u>, 529 U.S. 362 (2000), the Supreme Court has expounded upon the standard found in Section 2254(d)(1).  In <u>Williams</u>, the Court explained that Congress intended that habeas relief for errors of law may only be granted in two situations: (1) where the State court decision was "contrary to . . . clearly established Federal law as determined by the Supreme Court of the United States" or (2) where that State court decision "involved an unreasonable application of[] clearly established Federal law as determined by the Supreme Court of the United States."   The Court explained the two situations in the following terms:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Williams</u>, 529 U.S. at 412-13.  The Court of Appeals for the Third Circuit has also elucidated the "contrary to" clause by noting that "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome."

<u>Werts v. Vaughn</u>, 228 F.3d at 197 (<u>quoting</u> <u>Matteo v. Superintendent, SCI-Albion</u>, 171 F.3d 877, 888 (3d Cir. 1999)(en banc)).  Moreover, it is Petitioner's burden to prove the State court decision is either contrary to or an unreasonable application of clearly established federal law.

---

Supreme Court, that was previously unavailable; or
(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
  (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

See <u>Matteo</u>, 171 F.3d at 888; <u>Werts v. Vaughn</u>, 228 F.3d at 197.  Under the "contrary to" clause,

the relevant universe of analysis is restricted to the holdings of United States Supreme Court

cases as they existed at the time of the State court decision.  <u>Williams</u>, 529 U.S. at 412.  In

contrast, under the "unreasonable application" clause, federal habeas courts may consider lower

federal court cases in determining whether the State court's application of Supreme Court

precedent was objectively unreasonable.  <u>Matteo</u>, 171 F.3d at 890.

### *Procedural Default*

The doctrine of procedural default essentially provides that if a federal habeas petitioner

has either failed to present a federal claim in the state courts or failed to comply with a state

procedural rule and such failure to present or to comply would provide a basis for the state courts

to decline to address the federal claim on the merits, then such federal claims may not be

addressed by the federal habeas court.  <u>See</u>, <u>e.g.</u>, <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977)

(failure to object at trial constituted waiver of issue under state law and hence, a procedural

default under federal habeas law); <u>Francis v. Henderson</u>, 425 U.S. 536 (1976) (failure to comply

with state procedure requiring challenges to composition of grand jury be made before trial

constituted state waiver and, therefore, also constituted procedural default for purposes of federal

habeas); <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 848-49 (1999) (failure to raise issue in

discretionary appeal to state supreme court constituted a procedural default for habeas purposes).

Procedural default will not be found based upon the failure to comply with a state

procedural rule unless the state procedural rule is "adequate" and  "independent."  <u>Coleman v.</u>

<u>Thompson</u>, 501 U.S. 722, 750 (1991).  A state rule of procedure is "adequate" if it is firmly

established and applied with some consistency.  <u>Doctor v. Walters</u>, 96 F.3d 675, 684 (3d Cir.

1996) ("A state rule is adequate only if it is 'consistently and regularly applied.' <u>Johnson v.</u>

<u>Mississippi</u>, 486 U.S. 578, 587 (1988); <u>see also</u> <u>Ford v. Georgia</u>, 498 U.S. 411, 423-24 (1991)

(state procedural rule must be 'firmly established and regularly followed' to bar federal habeas

review).").  A state rule of procedure is  "independent" if it does not depend for its resolution on

answering any federal constitutional question.  <u>Ake v. Oklahoma</u>, 470 U.S. 68, 75 (1985) ("when

resolution of the state procedural law question depends on a federal constitutional ruling, the

state-law prong of the court's holding is not independent of federal law . . . .").

     There are two exceptions to the procedural default doctrine.  First, an issue that was not

properly raised in the state courts and, therefore, procedurally defaulted may nonetheless be

addressed by a federal habeas court if the petitioner shows cause for and actual prejudice

stemming from the procedural default.  <u>Wainwright v. Sykes</u>.  In order "[t]o show cause, a

petitioner must prove 'that some objective factor external to the defense impeded counsel's

efforts to comply with the State's procedural rule.' <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986)."

 <u>Sistrunk v. Vaughn</u>, 96 F.3d 666, 675 (3d Cir. 1996).  In order to show actual prejudice, "the

habeas petitioner must prove not merely that the errors . . . created a possibility of prejudice, but

that they worked to his actual and substantial disadvantage . . . .  This standard essentially

requires the petitioner to show he was denied 'fundamental fairness[.]'" <u>Werts v. Vaughn</u>, 228

F.3d at 193 (citations and some internal quotations omitted).   A second exception permits a

federal court to address the merits of a procedurally defaulted claim where the petitioner can

establish a "miscarriage of justice."  In <u>Werts v. Vaughn</u>, the Court explained this exception as

follows:

> if the petitioner fails to demonstrate cause and prejudice for the default, the
> federal habeas court may still review an otherwise procedurally defaulted claim
> upon a showing that failure to review the federal habeas claim will result in a
> "miscarriage of justice."  Generally, this exception will apply only in extraordinary
> cases, i.e., "where a constitutional violation has probably resulted in the
> conviction of one who is actually innocent...." [Murray v. Carrier, 477 U.S. 478]
> at 496 [(1986)].  Thus, to establish a miscarriage of justice, the petitioner must
> prove that it is more likely than not that no reasonable juror would have convicted
> him.  Schlup v. Delo, 513 U.S. 298, 326 (1995).

Id.

Lastly, if a petitioner has committed a procedural default and has not shown either cause

and prejudice or a miscarriage of justice, the proper disposition is to dismiss the habeas petition

with prejudice.  See, e.g., Wainwright v. Sykes;   McNary v. Farley, 16 F.3d 1225 (Table), 1994

WL 59278, at *3 (7th Cir. 1994) ("Ordinarily, when a district court concludes that a petitioner's

claims are barred by the doctrine of procedural default the petition is dismissed with prejudice.");

Thompson v. Champion, 996 F.2d 311 (Table),  1993 WL 170924, at *3 (10th Cir. 1993) ("We

do not understand why the magistrate judge recommended dismissal without prejudice.   If

federal habeas review of Petitioner's claim is barred by his state procedural default, or if

Petitioner's claims are without merit, the petition should be dismissed with prejudice.").

*Discussion*

The first two issues Petitioner raises are related but distinct claims.

I.  PETITIONER IS ENTITLED TO HAVE THE WRIT GRANTED AND A
NEW TRIAL ORDERED BECAUSE HE WAS DENIED COUNSEL AT HIS
PRELIMINARY HEARING, A CRITICAL STAGE OF HIS PROCEEDINGS.
PREJUDICE NEED NOT BE SHOWN.

Dkt. [1] at 6.

II.  TRIAL COUNSEL AND APPELLATE COUNSEL WERE INEFFECTIVE FOR HAVING FAILED TO RAISE THE ABOVE DENIAL OF COUNSEL CLAIM.

Id. at 7.

Petitioner has procedurally defaulted the first issue.  However, before we address the fact of his procedural default, we must first address the fact that the Respondent mistakenly states in their answer that "Petitioner's claims are not procedurally defaulted."  Dkt. [6] at 25.  The court believes this characterization to be simply an overbroad statement, insofar as generally the claims of ineffective assistance related to the underlying substantive claims[9] were not procedurally defaulted but some of the substantive claims themselves were procedurally defaulted.[10]  Hence, it is debatable whether the Respondent's statement constitutes a waiver of the procedural default issue.   The Court of Appeals has explained that  "[a] waiver is 'an intentional and voluntary relinquishment of a known right.'"  U.S. v. Leggett, 162 F.3d 237, 249 (3d Cir. 1998).  To the extent that waiver means an intentional and voluntary relinquishment of a known right in this context, it is clear that the Commonwealth did not intentionally and voluntarily relinquish a known right, as the statement referred to above clearly was erroneous, given that the attorney representing the Commonwealth was under the mistaken belief that Petitioner had not

---

[9]  By "substantive claim" we mean the claim underlying the claim of ineffective assistance of counsel claim, i.e., if Petitioner claimed that trial counsel was ineffective for failing to raise a Miranda issue, then the Miranda issue would be the "substantive claim."

[10]  Petitioner implicitly concedes as much by presenting in conjunction with each substantive claim a corresponding ineffective assistance of counsel claim in his habeas petition.  See also Petitioner's Traverse, Dkt. [9] at 4 ("Petitioner has presented his habeas claims so that each one encompasses the ineffectiveness component he initially pled.").

procedurally defaulted any of his claims.[11]  Fisher v. Texas, 169 F.3d at 301-02 (5th Cir.

1999)("We stated that a district court, in deciding whether to apply a waived procedural bar

defense sua sponte, should consider . . . whether the state intentionally waived the defense.");

Royal v. Taylor, 188 F.3d 239, 247 (4th Cir. 1999) ("Nonetheless, even if a state has waived its

right to raise the issue, we have held that a federal court, in its discretion, may hold a claim

procedurally defaulted. . . . In determining whether to exercise this discretion, *Yeatts* instructs us

to consider whether a state's waiver was intentional or inadvertent. . . .").

   Whatever the policy reasons for visiting upon the heads of private litigants in civil cases

the errors of their attorneys, it is not clear that those same policy reasons are applicable in the

context of federal habeas petitions which would have the effect of saddling the Commonwealth

with the errors of one of its District Attorneys.  Habeas proceedings are not normal civil actions

between two private parties; values quite beyond the parties are at stake in habeas proceedings,

as, for instance, finality of state criminal judgments, comity between the federal and state courts

as well as federalism, not to mention judicial efficiency.  See, e.g., Hill v. Braxton, 277 F.3d 701,

705 (4th Cir. 2002)("Actions brought pursuant to § 2254 implicate considerations of comity,

federalism, and judicial efficiency to a degree not present in ordinary civil actions.  These

interests eclipse the immediate concerns of the parties and provide federal habeas courts the

---

   [11]  To the extent that "waiver" is not the proper inquiry in this context and "forfeiture" is the proper inquiry, Scott v. Collins, 286 F.3d 923, 927 n. 3 (6th Cir. 2002)(distinguishing between the two terms, and defining forfeiture as "failure to make the timely assertion of a right"), abrogated on other grounds by, Day v. McDonough, 547 U.S. 198 (2006), whether the forfeiture of the affirmative defense of Petitioner's procedural default is intentional or not is a relevant inquiry in determining whether the court may rely on the defense notwithstanding the forfeiture.  Fisher v. Texas, 169 F.3d 295, 302 (5th Cir. 1999)(in "deciding to apply a waived procedural bar defense . . . . the district court should consider whether the state's failure to raise the defense is merely inadvertence or the result of a purposeful decision to forego the defense.").

discretionary authority to raise affirmative defenses that have not been preserved by the state. See [Yeatts v. Angelone, 166 F.3d 255, 261 (4th Cir.1999)] (explaining the propriety of considering procedural default defense that the Commonwealth failed to raise because of the 'overriding interests of comity and judicial efficiency that transcend the interests of the parties').");  Herbst v. Cook, 260 F.3d 1039, 1042 (9th Cir. 2001)("The interests of comity, federalism, and judicial efficiency underlying the district court's discretion to raise the issue of procedural default *sua sponte* apply equally to the statute of limitations, and we join the other circuits that have considered the issue by so holding.").

Even if the Commonwealth should be saddled with the errors of its attorney, there is no persuasive policy reason for saddling the already overburdened federal courts with the erroneous interpretation/application of federal law by a litigant. Flamingo Resort, Inc. v. United States, 664 F.2d 1387, 1391 n. 5 (9th Cir. 1982)("even if such a concession was made by the government, we are not bound by a party's erroneous view of the law."); Avila v. I.N.S., 731 F.2d 616, 621 (9th Cir. 1984) ("We see no reason why we should make what we think would be an erroneous decision, because the applicable law was not insisted upon by one of the parties.")(quoting, Smith Engineering Co. v. Rice, 102 F.2d 492, 499 (9th Cir. 1938)).

Even if a litigant's erroneous failure to raise an affirmative defense constitutes a waiver of the defense, in light of the interests implicated beyond the immediate parties, the Court of Appeals for the Third Circuit has held that it is not bound by such a failure/waiver.  Our Court of Appeals has held that a court of appeals has the discretion to *sua sponte* raise an affirmative defense.  Szuchon v. Lehman, 273 F.3d 299, 321 n. 13 (3d Cir. 2001).  In the context of the affirmative defense of a procedural default, our Court of Appeals has explained that

17

> [a] court of appeals can raise a procedural default sua sponte.  We retain this discretion because the doctrine of procedural default, while not a jurisdictional rule, 'is grounded upon concerns of comity between sovereigns and often upon considerations of judicial efficiency.' Hardiman, 971 F.2d at 503 (citations omitted).  'Because these concerns substantially implicate important interests beyond those of the parties, it is not exclusively within the parties' control to decide whether such a defense should be raised or waived.' Id.

Id. (some citations omitted).  In addition, the Court of Appeals has relied upon the procedural default doctrine even where the responding party arguably waived that issue in front of the Court of Appeals.  See, e.g., Sweger v. Chesney, 294 F.3d 506, 520-22 (3d Cir. 2002).

Where one of the reasons for sua sponte raising defenses is conservation of scarce judicial and legal resources, if a Court of Appeals can, as late in the proceedings as at the Appellate stage, sua sponte raise an affirmative defense and rely thereon even if a party has arguably waived the defense both before that court and the district court, *a fortiori*, district judges and magistrate judges should have the same discretion to raise an affirmative defense even earlier in the proceedings.  Munn v. Ward, 162 F.3d 1173 (Table), 1998 WL 764651 (10th Cir. 1998) ("Initially, we note that the magistrate judge's decision to review the procedural default issue sua sponte was within her authority.  See Hatch v. Oklahoma, 58 F.3d 1447, 1453 (10th Cir. 1995) (stating that federal courts may raise state procedural bar defense sua sponte)"); Boyd v. Thompson, 147 F.3d 1124, 1127 n.3 (9th Cir. 1998) ("That a Magistrate Judge, and not the District Judge, actually raised the issue of procedural default sua sponte makes no difference.  *See* 28 U.S.C. § 636(b) (Magistrate Judge may submit proposed findings of fact and recommendations for disposition in habeas cases to district court for de novo review).  Our following discussion of the power of the district court includes the acts of a Magistrate Judge.").

In light of the foregoing, the court will address the fact that Petitioner procedurally defaulted some of his claims.

As noted above, Petitioner procedurally defaulted the substantive claim that his Sixth Amendment right to counsel was violated because he was not provided counsel at his preliminary hearing.  Petitioner procedurally defaulted this claim because it could and should have been raised before or at trial or after trial via post trial motions by his trial counsel, Attorney Elash.  Because it was not raised, it was waived under state law.   See, e.g., Commonwealth v. Keefer, 367 A.2d 1082, 1086 (Pa. 1976)("Appellant also seeks review of two issues concerning the propriety of the preliminary hearing on the criminal homicide charge.  Appellant did not raise these issues in his original written post-trial motions nor did he attempt to have them considered following the denial of post-trial motions. We have held repeatedly that issues raised for the first time on appeal will not be considered.");  Commonwealth v. Ryan, 909 A.2d 839, 844-45 (Pa. Super. 2006)(Defendant waived for appellate review claim that trial court erred in refusing to hold preliminary hearing after Commonwealth changed grading of forgery charges from third-to second-degree felonies as he failed to raise it with trial court); Commonwealth v. Williams, 294 A.2d 909, 911 (Pa.Super. 1972)("The contention that he was substantially prejudiced by lack of counsel at the preliminary hearing is without merit. This was not raised in his direct appeal from judgment of sentence and should be deemed waived."), rev'd on other grounds, 312 A.2d 597 (Pa. 1973).  We find that the rule of failing to raise an issue at trial that could have been raised at trial was regularly and consistently applied at the time of Petitioner's waiver and thus the rule is adequate.  In addition, it is clear that the question of whether Petitioner raised this issue at trial is also independent, i.e., does not involve answering any federal constitutional issue.  The question

19

of having waived or forfeited this claim is merely a factual inquiry, did Petitioner raise it at trial

or did he not.  Accordingly, Petitioner procedurally defaulted this claim.  Because this claim was

procedurally defaulted, the only way it could be properly cognizable in the state courts is via a

claim of ineffective assistance of trial counsel for failing to raise this issue of not having counsel

at the preliminary hearing.  Hereinafter, the court will refer to the claim that Petitioner did not

have counsel at the preliminary hearing as "the preliminary hearing claim".[12]

However, this issue of trial counsel's ineffectiveness was also waived in the state courts

and, consequently, this court finds the issue of trial counsel's ineffectiveness for failing to raise

the preliminary hearing claim to have been procedurally defaulted.  Pennsylvania had[13] a

procedural rule of waiver that states where an attorney provides ineffective assistance of counsel,

then the criminal defendant must raise that attorney's ineffectiveness at the first opportunity

when the defendant is represented by new counsel, otherwise the claim of ineffectiveness is

---

[12] Of course, Petitioner could argue that he had cause for his procedural default of the preliminary hearing claim, namely, his trial counsel's ineffectiveness.  However, as explained, this claim of trial counsel's ineffectiveness and hence, this claim of "cause" was itself procedurally defaulted.  See, e.g., Edwards v. Carpenter, 529 U.S. 446, 453 (2000)(holding that "an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted").  Of course, Petitioner could then argue under Edwards v. Carpenter, that he had cause for the procedural default of his claim of trial counsel's ineffectiveness, namely, his direct appellate counsel's ineffectiveness for failing to raise this claim of trial counsel's ineffectiveness.  However, given that state courts determined, in adjudicating the ineffective assistance of counsel claim, that Petitioner failed to establish prejudice from counsels' failure to raise this issue, Petitioner cannot, therefore, establish the prejudice necessary to show "cause and prejudice" for his procedural default of the claim of trial counsel's ineffectiveness.  Joseph v. Coyle, 469 F.3d 441, 462-63 (6th Cir. 2006) (concluding that a demonstration of prejudice under Strickland "likewise establishes prejudice for purposes of cause and prejudice" in the procedural-default context); Lynch v. Ficco, 438 F.3d 35, 49 (1st Cir. 2006)("if a habeas petitioner can meet the prejudice standard needed to establish ineffective assistance under Strickland, then the prejudice standard under the "cause and prejudice" showing to excuse a procedural default is also met.").  Nor, on this record, can Petitioner establish a miscarriage of justice.

[13] This rule was  abrogated on December 31, 2002 by Commonwealth v. Grant, 813 A.2d 726 (Pa. 2002).

20

waived.  See, e.g., Commonwealth v. Green, 709 A.2d 382, 384 (Pa. 1998)("It is well-established

that a claim of ineffectiveness must be raised at the earliest possible stage in the proceedings at

which counsel whose effectiveness is questioned no longer represents the defendant.");

Commonwealth v. Laird, 726 A.2d 346, 354 (Pa. 1999) ("As claims of ineffectiveness of prior

counsel must be raised at the first opportunity when that counsel no longer represents the

petitioner [and here that did not happen], the issue has been waived.").  The Superior Court

applied this very procedural rule in this case. Dkt. [8-6] at 5 to 6.   Instantly, Petitioner was

represented on appeal from his conviction by Attorney Stavroulakis.  In the appeal brief filed by

her, she never raised the issue of Attorney Elash's ineffectiveness for failing to raise the

preliminary hearing claim.  Nor did she raise the ineffectiveness of Attorney Elash for failing to

raise the preliminary hearing claim in the petition for allowance of appeal, after the Superior

Court affirmed.  It may well be argued that Attorney Stavroulakis was ineffective for failing to

raise this issue of trial counsel's ineffectiveness.  And indeed, under the law of Pennsylvania, the

only proper way to have the preliminary hearing claim considered at all would be via a layered

ineffective assistance claim, i.e., that Attorney Stavroulakis was ineffective for failing to raise on

direct appeal the claim of Attorney Elash's ineffectiveness for failing to raise the preliminary

hearing claim at the trial level.  See, e.g., Commonwealth v. McGill, 832 A.2d 1014 (Pa.

2003)(explaining how to properly raise a layered ineffectiveness claim under state law).  Indeed,

every time the preliminary hearing claim was raised, Petitioner, in conjunction therewith also

always raised the claim that trial and direct appeals counsel were ineffective for failing to raise

the preliminary hearing claim.  Attorney Farrell was the one attorney who actually pleaded this

claim in the precise manner that it should have been pleaded under state law, namely in his

statement of matters complained of on appeal wherein he raised the claim as follows:

> Prior counsel (i.e., Attorney Stavroulakis) gave ineffective assistance for failing to raise the ineffective assistance of trial counsel for failing to argue that Appellant was denied his Right to Counsel at the Preliminary Hearing pursuant to the Sixth and Fourteenth Amendments of the United States Constitution as well as the provisions of the Pennsylvania Constitution and Rule 318 of the Pennsylvania Rules of Criminal Procedure.

Dkt. [6-9] at 27 to 28.  It is this precise issue, i.e., of Attorney Stavroulakis's ineffectiveness on

direct appeal that was properly raised and preserved in the state courts and was not procedurally

defaulted and hence is properly before this court.  It is to that issue we now turn.

The Superior Court in its PCRA opinion confirms this court's understanding that the

substantive claim of being denied counsel at the preliminary hearing stage was waived and only

properly considered within the context of an ineffective assistance of counsel claim.  The

Superior Court pertinently explained:

> Harris asserts that he was denied his right to counsel at the preliminary hearing.  However, Harris presents his claim in the context of a claim of ineffective assistance of prior counsel.  In this context, Harris must plead and prove, *inter alia*, prejudice caused by counsel's dereliction. "If it is clear that Appellant had not demonstrated that counsel's act or omission adversely affected the outcome of the proceedings, the claim may be dismissed on that basis alone and the court need not first determine whether the first and second prongs have been met. Commonwealth v. Travaglia, 661 A.2d 352, 357 (Pa. 1995).  "Prejudice in the context of ineffective assistance of counsel means demonstrating that there is a reasonable probability, that but for counsel's error, the outcome of the proceedings would have been different."

Dkt. [8-6] at 10 to 11.  The Superior Court determined that Petitioner failed to establish

prejudice.  Id.

Because the Superior Court addressed this claim of ineffectiveness on the merits, the proper inquiry is whether the Superior Court's disposition of this claim was contrary to or an unreasonable application of Supreme Court precedent extant at the time of the Superior Court's decision, i.e., in July 2005.  Petitioner did not even argue that the Superior Court's disposition of this ineffectiveness claim was contrary to or an unreasonable application of Supreme Court precedent and hence, he has not carried his burden to prove entitlement to relief.  See Matteo, 171 F.3d at 888; Werts v. Vaughn, 228 F.3d at 197.   Even if he had argued such, this court concludes that the Superior Court's disposition of the only claim cognizable in connection with the preliminary hearing claim, i.e., appellate counsel's ineffectiveness for failing to raise trial counsel's ineffectiveness for failing to raise the preliminary hearing claim, was neither contrary to nor an unreasonable application of Supreme Court precedent.

Instead of arguing that the Superior Court's disposition of the ineffectiveness claim was contrary to or an unreasonable application of Supreme Court precedent, Petitioner solely argued that he was denied his Sixth Amendment right to counsel at the preliminary hearing and that "[t]he state courts found that Petitioner could not demonstrate prejudice and dismissed the claim."  Dkt. [1 ] at 6.  Petitioner then goes on to argue that the State Courts' disposition of this claim was contrary to Strickland, because Strickland said that "[i]n certain Sixth Amendment contexts, prejudice is presumed.  Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice."  Dkt. [1] at 6 (quoting Strickland v. Washington, 466 U.S. 668, 692 (1984)).  Petitioner contends that the State Courts required that he show prejudice when they should have presumed prejudice from the lack of counsel at the preliminary hearing.   Given that the facts of Strickland did not involve either the constructive or

23

actual denial of the assistance of counsel altogether, such statements in <u>Strickland</u> are dicta and,

hence, even if the Superior Court's holding were contrary to the above-quoted dicta of

<u>Strickland</u>, such would not entitle Petitioner to relief under AEDPA.    In any event, the Superior

Court did not adjudicate the substantive preliminary hearing claim, rather it adjudicated the

ineffective assistance of counsel claim and under <u>Strickland</u> prejudice **is** required for such a

claim.  Petitioner failed to argue either in his habeas petition or in his traverse that the Superior

Court's disposition of the ineffective assistance of counsel claim was contrary to or an

unreasonable application of Supreme Court precedent.  Having failed to argue that the Superior

Court's disposition of this ineffective assistance of counsel claim is contrary to or an

unreasonable application of Supreme Court precedent extant at the time of the Superior Court's

decision, Petitioner fails to carry his burden to show entitlement to relief as to this claim.[14]

---

[14]  Because the parties devote so much time to arguing the substantive preliminary hearing claim, the court will briefly address that issue as an alternative holding.  First, Petitioner argues that no prejudice is necessary to be shown by the denial of counsel at the preliminary hearing stage because such denial constitutes a structural error and hence the denial of counsel at this stage, per se requires the grant of the writ.  The Commonwealth points out that such denial of counsel at the preliminary hearing stage is subject to a harmless error analysis as recently held by the Court of Appeals in <u>Ditch v. Grace</u>, 479 F.3d 249 (3d Cir. 2007), *petition for certiorari filed*, 76 USLW 3050 (July 24, 2007).  Petitioner argues that the error of denying him counsel was not harmless because the victim's identifications of the Petitioner as the shooter both at the time of the shooting and at trial were the sole evidence of guilt and if counsel had been present at the preliminary hearing then he could have cross-examined the victim and brought out the weaknesses of the identification and at the least have obtained sworn testimony from the victim to use to possibly impeach the victim at trial.  Dkt. [9] at 10 to 18.  The Court is not persuaded for several reasons.  First, the court is not convinced that the victim even testified at the preliminary hearing.  <u>See</u> Dkt. [8-8] at 30 (listing as the only Commonwealth witnesses who testified at the preliminary hearing, the two police officers who investigated the shooting).  <u>But see</u> Transcript of PCRA Hearing  Dkt. [7-7] at 36, lines 15 to 17 (wherein Petitioner testified that the victim testified at the preliminary hearing).  Even if the victim did testify at the preliminary hearing, all of the facts that Petitioner points to as undermining the victim's identification of Petitioner go to the weight to be accorded to the victim's identification, not to its admissibility.  Hence, a prima facie case would have been established at the preliminary hearing in light of the admissible identification.  Petitioner does not argue that had counsel been present no prima facie case would have been established nor could he.  The only argument he does make is that had counsel been present he could have "boxed" the victim's testimony in such that any inconsistencies between the victim's preliminary hearing testimony and the victim's testimony at trial

24

Petitioner also cites to United States v. Gonzales, 126 S.Ct. 2557 (2006). Dkt. [1] at 7; Dkt. [9] at 18 to 19; 21 to 22. However, it is unclear whether he is arguing that the State Courts' holding (actually, the State Courts' non-holding given that the Superior Court addressed the ineffectiveness claim and not the substantive preliminary hearing claim) is contrary to that case. If indeed he is arguing such, there are three problems. One, Gonzalez-Lopez, which was decided on June 26, 2006, was not extant at the time of the Superior Court's decision, which was rendered July 29, 2005 and so, not properly considered under AEDPA. Second, the two cases are not so similar that Gonzalez-Lopez can be considered to be controlling here. Third, even if the two cases were similar enough that Gonzalez-Lopez could have been considered controlling, Gonzalez-Lopez is not retroactively applicable, contrary to Petitioner's unsupported contention, Dkt. [1] at 7. See, e.g., Rodriguez v. Chandler, 492 F.3d 863 (7th Cir. 2007)(holding that Gonzalez-Lopez is not retroactively applicable).

---

could have impeached the victim's identification. Dkt. [9] at 12. As to the potential impeachment value of any inconsistency between the preliminary hearing testimony of the victim and the testimony at the trial, the victim was vigorously cross-examined and the victim's drug use and drinking were brought out as well as the inconsistencies in the victim's statements made to the police and what the victim was testifying to at trial. State Court Record of Trial Transcript at pp. 116 -18. The inconsistencies and the victim's credibility were pounded on by Attorney Elash in his closing. Id. at 224 - 241. This court is convinced that the lack of having sworn testimony from the victim's preliminary hearing testimony (assuming there was such) in order to impeach him at trial, assuming that such preliminary hearing testimony would indeed be impeaching of the victim's testimony at trial, did not have a substantial and injurious effect or influence in determining the jury's verdict. The incremental value of such impeachment is negligible, and essentially cumulative, in light of the actual impeachment done at trial and in light of the actual challenges to the victim's credibility raised in the defense closing.

As to Petitioner's contention that trial counsel's preparation would have been different if the trial counsel had sworn testimony of the victim, subject to cross examination, at the preliminary hearing, the argument is at best speculative whether such difference in preparation would have had any impact on the jury because, again, the difference in preparation, as argued by Petitioner, all goes to questions of the victim's credibility. See Dkt. [9] at 12 to 13.

As to the Petitioner's claim that Ditch is wrongly decided, Dkt. [9] at 18, and denial of counsel should not be subject to a harmless error analysis, this court deems itself bound by Ditch and even if it were not, it would also conclude that denial of counsel at that stage is subject to the harmless error analysis.

25

Accordingly, Petitioner's claim of ineffectiveness of appellate counsel for failing to raise trial counsel's ineffectiveness for failing to raise the substantive preliminary hearing claim is without merit insofar as Petitioner has not established that the Superior Court's adjudication of the claim was contrary to or an unreasonable application of Supreme Court precedent.

<u>Alleged Brady Violation</u>

Petitioner's next issue is that he was denied due process of law during trial when the prosecutor allegedly misled the court and jury when he said that the victim and the prosecution had no deal for the victim's testimony other than an agreement that the victim's testimony would be subject of use immunity.  Again, this substantive issue was never raised in the trial or direct appeal process.  As such, the substantive claim is procedurally defaulted.  Hence, the only cognizable claim in the state courts and, consequently, the only cognizable claim now, would be that direct appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness for failing to raise this substantive issue of failure to disclose, (hereinafter, the court will refer to the substantive issue of failure to disclose as, "the <u>Brady</u>[15]claim").  <u>See</u> Dkt. [8-6] at 7, Superior Court slip op. (describing the issue before them as "Harris next claims that prior counsel were ineffective for failing to pursue a claim that the Commonwealth violated his constitutional right to due process when the prosecutor misled the court concerning whether a deal had been made for the victim's testimony.").

Petitioner points out that although Prosecutor Sachs made a representation to the court that there was no deal other than use immunity, in fact, roughly forty-five days after Petitioner's trial, a plea was entered into by the victim and Prosecutor Sachs, wherein the victim was given a

---

[15]  <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).

26

sentence of probation without verdict.  Petitioner contends that this is clear evidence that a deal

existed at the time of the Petitioner's trial and the prosecutor failed to disclose this deal in

violation of <u>Brady v. Maryland</u>.

This issue was the subject of a PCRA evidentiary hearing, where prosecutor Sachs who

negotiated the deal with the victim essentially testified that at the time of the Petitioner's trial,

there was no deal other than the use immunity deal, which was disclosed.  Dkt. [8-2] at 17 ("I

[i.e., Sachs] indicated that he [i.e, the victim  wasn't going to get any sort of a break in the case

where he was my defendant simply because he was testifying in this other case. . . . [As to why

the victim received such a lenient sentence, Prosecutor Sachs stated] there would have been some

problem that either developed with my case or that I was unaware of at the time that I was

speaking to the Court [concerning the fact that there was only a use immunity deal] but it [the

probation without verdict plea deal  wasn't in exchange for any testimony that he [the victim]

gave in this case" i.e., Petitioner's criminal trial).  Petitioner contends that the chronology of

facts as recounted strongly suggests that there was, in fact, a deal and Prosecutor Sachs'

representation to the contrary strains credulity.

Unfortunately for Petitioner, Prosecutor Sachs' representation at Petitioner's trial and his

testimony at the PCRA evidentiary hearing did not strain the credulity of the PCRA court who

credited Prosecutor Sachs' testimony that at the time of Petitioner's trial there was no deal with

the victim in exchange for his testimony other than the use immunity deal.  The PCRA Court

apparently credited Prosecutor Sachs' testimony that no deal other than use immunity existed

because the PCRA Court denied relief on this claim, reasoning that "[t]here are countless reasons

why the Commonwealth may enter into a plea agreement on any individual case.  But the fact

remains that on the date of [Harris'] trial , there was no deal with [Smith]."  PCRA Court slip op. at 6, Dkt. [6-9] at 39.  The PCRA court's credibility determination of finding Prosecutor Sachs' testimony worthy of belief that no deal existed other than the use immunity deal at the time of Petitioner's trial is binding on this court.  See Campbell v. Vaughn, 209 F.3d 280, 288 (3d Cir. 2000)("it was the PCHA court's duty to resolve the credibility dispute.... We believe the PCHA court made this finding of fact to which we must defer....").  So, although it may stretch Petitioner's credulity to believe no deal existed, it did not stretch the PCRA court's credulity and the PCRA court is the relevant credibility determiner for our present purposes.

The Superior Court affirmed the denial of relief as to the claim of ineffectiveness of counsel for failing to raise the Brady claim because the Court found that there was no merit to the substantive Brady claim, i.e., there was no undisclosed deal and so, appellate counsel could not have been ineffective for failing to raise trial counsel's alleged ineffectiveness for failing to raise the Brady claim.  Dkt. [8-6] at 9, Superior Court slip op. ("Harris presented no evidence supporting his claim of a plea bargain between Smith and the Commonwealth in exchange for Smith's testimony against Harris.  Because Harris failed to establish that his claim has arguable merit and the record supports the PCRA court's determination, Harris is not entitled to relief on this claim" of counsel's ineffectiveness).

Petitioner fails to argue, yet alone establish that the Superior Court's disposition of this claim was contrary to or an unreasonable application of any extant Supreme Court precedent.  Nor does this court find the Superior Court's disposition to be contrary to or an unreasonable application of the Supreme Court's precedent regarding ineffective assistance.  Accordingly, Petitioner's claim does not merit relief.

<u>Alleged ineffectiveness for failing to call Alibi Witness Scott</u>

Petitioner's next claim is a claim that his trial counsel was ineffective for failing to call his alibi witness Mr. Scott.  Again, as this claim of trial counsel's ineffectiveness was not raised by Attorney Stavroulakis on direct appeal, it was waived and, procedurally defaulted and, now only properly cognizable as a claim that Attorney Stavroulakis was ineffective for failing to raise trial counsel's ineffectiveness for failing to call Mr. Scott.

This claim was subject to a PCRA evidentiary hearing, at which Attorney Stavroulakis testified that Petitioner did not ever mention alibi witnesses to her.  Dkt. [7-7] at 8 & 10 (PCRA transcript 11/20/02, at 8 & 10).  The alleged alibi witness also testified at the PCRA evidentiary hearing.  Mr. Scott testified that he was at a bar/club with Petitioner on the night of the shooting.  However, he was asked by Petitioner's PCRA attorney, Mr. Leibowitz, at what time did he leave the bar with Petitioner, and Mr. Scott originally answered after 2 a.m.  Attorney Leibowitz attempted to ask the question again in a leading manner, asking, "What time was it, 3:00?"  <u>Id</u>. at 14.  The Commonwealth Attorney objected and the objection was sustained.  <u>Id</u>. at 15.  The Commonwealth attorney also brought out the fact that the bar/club closed at 2 a.m.  <u>Id</u>. at 19.  The Commonwealth attorney also brought out the fact that Mr. Scott had previously signed an affidavit wherein he stated that he and Petitioner had left the bar at 2:30 a.m.  <u>Id</u>., at 20.

The PCRA court, having viewed the witnesses, made the following determination:

[Clayton Scott] was asked when he left the bar and responded "It was after 2:00 o'clock. . . ." Appellate Counsel [i.e., PCRA counsel, Attorney Leibowitz] attempted, unsuccessfully, to solicit from Scott testimony that he left the bar with Harris at 3:00 a.m., the approximate time of the shooting.  Scott then related he followed Harris to a bridge which he crossed and that he, Scott, proceeded in a different direction.  He also stated Harris left the Club with a woman.

> On cross-examination Scott testified that it takes five to ten minutes to drive from Clairton [where the bar was] to Duquesne.  The shooting was in Duquesne. He also acknowledged having previously signed an affidavit in which he stated he left the Club at 2:30 a.m. An affidavit attached to the Brief as Exhibit 1 and dated January 23, 2002, recites that Harris left the Club at 3:00 a.m.
>
> Scott's testimony and the Affidavit referred to on cross-examination establish that Harris could readily have proceeded from Clairton to Duquesne and shot the victim at 3:00 a.m., and to be sure, could have done so well before 3:00 a.m. Scott would not have provided an alibi defense for Harris.

Dkt. [8-3] at 4 to 5 (citations to the record omitted).   The Superior Court affirmed the denial of relief on this claim, reasoning that in order for trial counsel to be ineffective for failing to call Scott as an alibi witness, Petitioner would have to show that Scott was a viable alibi witness, i.e., that the underlying claim was of arguable merit. Dkt. [8-6] at 6.  The Superior Court concluded based upon the PCRA court's opinion that Petitioner failed to establish that Scott was a viable alibi witness and so, there could have been no ineffectiveness on the part of trial counsel.  Dkt. [8-6] at 6 to 7.

Petitioner does not argue that the Superior Court's disposition of this claim was contrary to or an unreasonable application of United States Supreme Court precedent and so fails to carry his burden to show entitlement to relief.  Indeed, the Superior Court's disposition of this claim was neither.

Petitioner does argue though that the "state court decision is not faithful to the PCRA record in determining that the alibi witness could not provide an alibi.  Mr. Scott testified that he remained in the bar with Petitioner until it closed at 2:00 and then some time thereafter.  The shooting occurred at 2:45 according to police accounts and dispatches." Dkt. [1] at 8.  To the extent that this is an argument under Section 2254(d)(2) that the PCRA Court's decision "resulted in a decision that was based on an unreasonable determination of the facts in light of

the evidence presented in the State Court proceeding[,]" this court is not persuaded.  Independent review of the PCRA hearing transcript provides ample support for the PCRA court's determination that Scott left the bar with Petitioner sometime after 2:00 a.m., and maybe indeed as late at 2:30 a.m. but that this still would have left sufficient time for Petitioner to have committed the shooting of the victim.   Essentially, the PCRA court found Scott's attempt to testify that he left the bar at 3:00 a.m. with Petitioner to be not worthy of belief.  This is well within the PCRA court's province and not a ground for granting of the writ.

Given that the state court concluded trial counsel was not ineffective for failing to call Scott as an alibi witness, *a fortiori*, Attorney Stavroulakis could not be deemed ineffective for failing to raise on appeal this meritless issue of trial counsel's ineffectiveness.  Werts v. Vaughn, 228 F.3d at 203 ("counsel cannot be ineffective for failing to raise a meritless claim.").  This issue does not merit Petitioner relief.

Alleged ineffectiveness for advising Petitioner not to testify

Petitioner's last issue is that trial counsel was ineffective for wrongly advising Petitioner not to testify because Petitioner could be impeached with his criminal convictions, none of which, Petitioner points out, were *crimen falsi*.

Again, this issue was the subject of an evidentiary hearing in the PCRA court.  The PCRA court addressed this issue as follows:

> Trial counsel, an attorney experienced in criminal defense work, and especially homicide cases, emphatically denied he advised Harris not to testify.  Rather, counsel stated that while he had no specific recollection advising Harris not to testify, if he had no prior record, there was "no way" he would have told him not to testify.  More directly, counsel made it clear that if he had advised petitioner not to testify, "it was because I thought that he should not testify, whatever, his criminal record was or was not."

31

Harris testified that trial counsel specifically advised him not to testify because of his past record.  On cross-examination Harris acknowledged that at trial he waived his right to testify.

This Court credits the testimony of trial counsel that if he advised petitioner not to testify it would have been because it was not in his interest to do so, and not because he could have been impeached based on a prior criminal record.  Trial counsel, as noted, was an experienced homicide defense attorney.

Dkt. [8-3] at 15 to 16 (citations to the record omitted).    The Superior Court affirmed on this precise basis.  Dkt. [8-6] at 13 ("We agree with the reasoning of the PCRA court and affirm on the basis of its Supplemental Notice with regard to this claim.").   Given the finding that Attorney Elash did not wrongfully advise Petitioner, the issue of Attorney Elash's alleged ineffectiveness is without merit and, therefore, so too would be appellate counsel's ineffectiveness for failing to raise this issue of trial counsel's ineffectiveness.  Because Petitioner failed to argue that the Superior Court's disposition of this claim was contrary to or an unreasonable application of Supreme Court precedent, he has failed to carry his burden to show entitlement to relief. Moreover, this court finds that the Superior Court's disposition of this claim was neither.

***Certificate of Appealability***

Section 2253 of Title 28 U.S.C. generally governs appeals from district court orders regarding habeas petitions.  Section 2253 essentially provides in relevant part that a certificate of appealability, which is a prerequisite for allowing an appeal to a Court of Appeals, should not be issued unless the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253 (C)(2).  This statutory standard has been explained as requiring a determination of whether "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable

whether the district court was correct in its procedural ruling."  <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).

Applying this standard to the instant case, the court concludes that jurists of reason would not find it debatable whether dismissal of the Petitioner's claims due to his procedural default and/or because his claims do not merit relief were correct.  Accordingly, a certificate of appealability should be denied.

<u>CONCLUSION</u>

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report.  Any party opposing the objections shall have seven (7) days from the date of service of the objections to respond thereto.  Failure to timely file objections may constitute a waiver of any appellate rights.

Respectfully submitted,

/s/  *Amy Reynolds Hay*
United States Magistrate Judge

Dated:  26 September, 2007

cc:      The Honorable Donetta W. Ambrose
         Chief United States District Judge

         All Counsel of Record via CM-ECF